UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ERNEST FLEMING, | ) | Civil Action No.: 4:04-2398-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| FLORENCE COUNTY SCHOOL | ) | |
| DISTRICT THREE, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

  Plaintiff Ernest Fleming initiated this action, alleging causes of action for systematic race discrimination and individual race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and state law causes of action for breach of contract, breach of contract with fraudulent intent, and wrongful termination in violation of employment contract against Defendant Florence County School District Three ("Defendant" or "the District"). On August 9, 2006, Defendant filed a Motion for Summary Judgment (Document # 37) as to all of Plaintiff's claims. Plaintiff filed a response on September 28, 2006. This matter is now ripe for disposition.

**FACTS**

  Plaintiff was employed by Defendant as a certified teacher at Lake City High School (the high school) from 1996 until January of 2005 when he resigned. Ex. 3 to Defendant's Motion. He has more than twenty-six years of experience as a teacher. Summons 1 to Plaintiff's Response.[1] Pursuant to a yearly supplemental services contract, Plaintiff was also employed by Defendant as a

---

[1] Some of the attachments to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Docket # 51) are labeled "Summons # ___, while others are labeled Exhibit # ___. Thus, the undersigned will refer to Plaintiff's attachments as set forth by Plaintiff.

basketball coach at the high school from the 1996-1997 school year through the 2002-2003 school year. Ex. 3 to Defendant's Motion. Plaintiff has over nineteen years of experience as a basketball coach. Summons 1 to Plaintiff's Response. While at the high school, Plaintiff was supervised by the principal, Herbert Guerry, and the athletic director, Mickey Moss. Id.

On March 5, 2003, Defendant received a complaint from a male student (the complainant) and his parent that Plaintiff used the terms "gays" and "faggots" during his physical science class at the high school and stated that he would not allow faggots on his basketball team or in his classroom and then asked the complainant and another student to leave to room. Ex. 3 to Defendant's Motion. The complainant alleged that other students in the classroom perceived Plaintiff's comments to be directed towards him and that he had been harassed and called a faggot as a result. Id. The complainant was subsequently involved in a fight with another student after being called a faggot and was suspended. Id. The complainant also made threats against Plaintiff. Id. The complainant was removed from Plaintiff's class and Defendant took over an investigation into the incidents that had been started by the high school. Id.

Beth Wright, Superintendent of Florence County School District Three, conducted the investigation. Id. As part of her investigation, Ms. Wright interviewed the complainant, his family, Plaintiff, and twenty-three students who were in the classroom when the alleged comments were made. Id. In her affidavit, Ms. Wright stated that, "[w]hile the students' statements varied somewhat, it was clear that the Plaintiff, during class, had used the terms 'faggots' and 'gays' and made statements regarding an intolerance for these individuals. The Plaintiff thereafter removed the complainant from the classroom, leaving many of the students, including complainant, to believe that the Plaintiff was referring to the complainant when making these comments." Id.

-2-

Plaintiff contends that, while he was teaching on the day in question, two of his students were misbehaving and had been disruptive for some time. He commented to the two students, "Guys, you make me think that something is wrong." Summons 1 to Plaintiff's Response. One of the students responded by saying, "I am no faggot." At that time, Plaintiff asked the class if they heard him call anyone a faggot, to which members of the class responded, "no." Id. Plaintiff then asked the two students to step outside the classroom. Id.

As a result of her investigation, Ms. Wright made the following findings:

> (1) the complainant and another student were misbehaving and disrupting the Plaintiff's classroom on February 27, 2003; (2) the Plaintiff used the terms "gays" and "faggots" in the classroom on February 27, 2003 and made statements regarding an intolerance for homosexuals, including stating that he would not tolerate "faggots" in his classroom or on his basketball team; (3) after making these statements, the Plaintiff removed the complainant and another student from the class.

Ex. 3 to Defendant's Motion. Ms. Wright found that the comments made by Plaintiff were not related to the subject matter of the class and were not an appropriate means for dealing with classroom misbehavior. Id. She also found that the comments reflected a personal bias of Plaintiff, set an example of prejudice, and recklessly exposed a student to embarrassment and ridicule. Id. Ms. Wright determined that Plaintiff's comments constituted unprofessional conduct. Id.

While investigating the complainant's allegations, Ms. Wright also learned of possible rules violations by the basketball team, which was coached by Plaintiff. Id. As a result, Ms. Wright reviewed the score books for the junior varsity and varsity basketball teams and learned that the varsity team was in violation of the player participation rule. Id. The High School League player participation rule permits basketball players to dress out for no more than three games in a seven day period. Id.; Matthews Dep. at 11 (Ex. 9 to Plaintiff's Response). Plaintiff permitted a player to

dress out for more games than permitted by the rule. Id. Ms. Wright requested that the high school self-report the violations to the High School League, which it did. Id. The League imposed a $100.00 fine and the basketball team was required to forfeit all of the games in which the ineligible participation occurred. Id.

Pursuant to the District's Athletic Policy Manual, coaches are responsible for compliance with all applicable High School League rules. Id. Coaches attend mandatory training sessions from the High School League each year. Matthews Dep. at 19-21 (Ex. 1 to Defendant's Motion). The eligibility rules and the participation rule that Plaintiff violated are discussed in those training sessions. Id. at 23-25. In addition, both the constitution and the Bylaws of the High School League contain the rule. Id.

In addition to the above-referenced incidents, Plaintiff had previously been reprimanded twice. Ex. 3 to Defendant's Motion. Plaintiff received a verbal reprimand for failing to adhere to the Athletic Policy Manual's disciplinary guidelines after one of his basketball players used profanity during a game. Id. Plaintiff received a written reprimand on August 12, 2002, for violation of Defendant's procurement policy in his purchase of shoes for the basketball team. Id.

On March 20, 2003, Ms. Wright notified Plaintiff that, as a result of his classroom behavior and violations of High School League Rules, his supplemental services contract to serve as head coach of the varsity basketball team was terminated. Id. However, although Ms. Wright terminated Plaintiff's supplemental services contract during the 2002-2003 school year, Plaintiff had already fulfilled his obligations as basketball coach under that contract and had been paid in full for his services. Plaintiff Dep. at 176-77 (Ex. 2 to Defendant's Motion). Plaintiff's employment as a teacher was not affected.

The employment dismissal provisions of the South Carolina Teacher Employment and Dismissal Act, S.C.Code Ann. §§ 59-25-410, et al, do not apply to supplemental services contracts, and, as such, Plaintiff was not entitled to a hearing to dispute the termination of his contract. Ex. 3 to Defendant's Motion. However, Plaintiff requested an Administrative meeting and Ms. Wright agreed to meet with him on April 4, 2003. Id. Plaintiff attended the meeting but refused to participate in any meaningful discussion with Ms. Wright. Id. Plaintiff thereafter requested a meeting with the Florence County School District Three Board of Trustees ("Board" or "School Board"). Id. The Board agreed to hear Plaintiff on May 12, 2003, and Plaintiff appeared before the Board with legal counsel. Id. After Plaintiff had been heard, a vote was taken by the Board and the decision to terminate Plaintiff's supplemental services contract was not disturbed.[2] Ex. 4 to Plaintiff's Response.

The position of head coach for the varsity basketball team at the high school was advertised with the South Carolina High School League. Id. Among the candidates to interview for the position was Willie Thomas, an African American coach formerly employed by the Greenville County Schools System with over twenty years of coaching experience. Id. Mr. Thomas had won five state championships as a head basketball coach and two state championships as an assistant coach. Id. He had also won two state championships as an assistant football coach and two state

---

[2] Plaintiff provided the minutes for the School Board meetings of May 12, 2003, and May 23, 2003. Ex. 4 to Plaintiff's Response. The May 12, 2003, minutes reveal that a motion was made to support the decision of the Superintendent to terminate Plaintiff's supplemental services contract and another motion was made to reinstate Plaintiff as the basketball coach. Id. One member of the Board was unable to vote, and both motions received a 4-4 vote. Id. The May 23, 2003, minutes reveal that Plaintiff's attorney requested a motion for reconsideration, and one Board member made a motion to deny the request. Id. The motion to deny the request passed by a vote of 4-3. Id. Two Board members were absent. Id.

championships as a track coach. Id. Mr. Thomas was offered the position of head basketball coach for the high school's varsity team and signed a contract for the 2003-2004 school year. Id.

Plaintiff filed two race discrimination complaints with the Equal Employment Opportunity Commission (EEOC); one on December 9, 2003, and the other on February 16, 2004. Ex. 3 to Defendant's Motion. The EEOC closed the second complaint because it was a duplicate of the first complaint and issued a right to sue letter on April 26, 2004. Id. Plaintiff filed the present action on July 20, 2004.

Plaintiff alleges that Defendant failed to discipline white teachers for similar, unprofessional conduct, and cites Mickey Moss, the athletic director and head football coach, for allegedly violating the participation rule, see Blue Dep., Ex. 1, 3 (Ex. 3 to Plaintiff's Response); choking another coach, see McFadden Dep. at 11 (Ex. 8 to Plaintiff's Response), and kicking one of his football players, see Johnson Dep. at 13 (Ex. 7 to Plaintiff's Response); McFadden Dep. at 10-11 (Ex. 8 to Plaintiff's Response); a baseball coach for allegedly violating the participation rule, see Blue Dep., Ex. 1, 3 (Ex. 3 to Plaintiff's Response); and a male teacher for allegedly being in a bathroom stall with two female students, Ex. 3 to Defendant's Motion, as examples of similarly situated white employees.

Through various letters to Ms. Wright, the Coalition for Equal Education and Employment[3] (CEEE) informed the District of its concerns regarding the head football coach and athletic director, Mickey Moss, a white male, for misconduct and violations of the athletic policies and High School League rules. Blue Dep., Ex. 1, 3 (Ex. 3 to Plaintiff's Response). According to the CEEE, Coach

---

[3]Ronald Blue, a former ROTC Instructor with the Florence County School District Three, formed the CEEE with concerned parents and residents to address racial concerns in the District. Blue Dep. at 7 (Ex. 3 to Plaintiff's Response). The purpose of the group was to notify the District and the community of its concerns regarding race relations within the District. Id.

-6-

Moss violated the High School League participation rules by allowing at least five junior varsity football players to participate in three games in one week.[4] Id. In addition, the CEEE alleged in its letters that the baseball coach allowed ineligible students to participate in games. Id. The CEEE asked for an investigation into these matters and suggested that the District hire an independent investigator so that an impartial investigation could take place. Id. Ms. Wright responded by requesting that the CEEE turn over any information it might have that would assist in the investigation of its allegations. Blue Dep., Ex. 2, 4 (Ex. 3 to Plaintiff's Response). Ms. Wright also suggested that the CEEE report its concerns to the appropriate agencies, such as the High School League, to eliminate any questions as to whether the District interfered with the process in any way. Id.

Ronnie Matthews, Executive Director for the South Carolina High School League, indicated in a letter to Mr. Blue that he had spoken with Coach Moss regarding the alleged violation to the participation rule. Blue Dep., Ex. 7 (Ex. 3 to Plaintiff's Response). After speaking with Coach Moss, Mr. Matthews determined that the violation occurred because a varsity game scheduled for a Friday night was postponed due to inclement weather and was played on the following Monday instead. Id. As a result, several junior varsity players played in the Monday night varsity game, the

---

[4]Also, Roy Lee McFadden, a member of the CEEE, testified during his deposition that he called the High School League to request information about Coach Moss, and Ronnie Matthews, Executive Director of the League, responded via letter, indicating that Coach Moss had nineteen counts against him for playing students who were ineligible to play. McFadden Dep. at 16-17 (Ex. 8 to Plaintiff's Response). Plaintiff has not produced the letter. According to Mr. McFadden, the CEEE notified the school board about Coach Moss' violations, but no action was taken. Id. at 17. No evidence in the record indicates that the District was informed about these violations.

Thursday night junior varsity game and the Friday night varsity game.[5] Id. Mr. Matthews stated, "Honest mistakes do occur in every line of business. Having known Coach Moss for twenty plus years, this was an honest mistake. No coach is more conscience of abiding by the rules than Coach Moss." Id. The District also viewed the violation as an honest mistake and, thus, declined to take any action against Coach Moss. Ex. 3 to Defendant's Motion. No action was taken against Coach Moss by the League because the violation was brought to the attention of the League after the school year ended.[6] Matthews Dep. at 31 (Ex. 9 to Plaintiff's Response).

In the same letter, Mr. Matthews noted that no violation occurred by the baseball coach where a player participated in sports activities during a semester in which he had too many absences. Id. Mr. Matthews explained that the student may be ineligible to participate in sports during the following semester but was not ineligible in the current semester. Id. Accordingly, no sanctions were imposed against the school by the League, and the District declined to discipline the coach. Ex. 3 to Defendant's Motion.

Ms. Wright investigated the allegation that Coach Moss had kicked a black football player in the rear. Id. During an interview, the football player, who was over the age of eighteen, indicated that the conduct was the coach's way of motivating him. Id. The student did not file a complaint. Id. The District did not discipline the coach. Id.

---

[5] Students are allowed to dress out for no more than eight quarters per week. Matthews Dep. at 28-29 (Ex. 9 to Plaintiff's Response).

[6] It is the policy of the High School League not to impose sanctions against a school if the League is informed of a violation after the school year has ended. Matthews Dep. at 28 (Ex. 9 to Plaintiff's Response).

Although the next incident occurred prior to Ms. Wright's employment with the District, she also investigated the allegation that Coach Moss choked another coach during a football game. Id. The other coach indicated to Ms. Wright that the incident had been blown out of proportion and he did not want to file a complaint. Id. No coaches were disciplined. Id.

Finally, Ms. Wright also investigated the incident during which a male teacher was heard in a bathroom stall with two female students. Id. Through the investigation, Ms. Wright learned that the male teacher was in the female restroom verifying the female students' report of writing on the restroom walls. Id. A female teacher accompanied the male teacher and the two students in to the restroom. Id. Ms. Wright issued an oral warning to the teacher based upon the fact that there were sufficient female teachers on staff to address the students' report, and that his actions compromised the District's integrity, leaving him vulnerable to claims of misconduct. Id.

## DISCUSSION

### *Summary Judgment Standard*

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party

must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celetex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves"). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Celetex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

*Race Discrimination Claims*

There are two methods of proving a case of intentional discrimination under Title VII: the method set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) (mixed-motive) and the method established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)(pretext).

Under the McDonnell Douglas[7] analysis, plaintiff has the initial burden of demonstrating a prima facie case of discrimination. To establish a prima facie case, plaintiff must show (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) other employees who are not members of the protected class did not suffer an adverse employment action under apparently similar circumstances. Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002).[8] Under some circumstances, the fourth element can be established by presenting evidence raising an inference of discrimination. See Miles v. Dell, Inc., 429 F.3d 480, 486-87 (4th Cir. 2005); EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 n.2 (4th Cir. 2001)(citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981)). Once plaintiff has established a prima facie case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the termination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 ((1981). This is merely a burden of production, not of persuasion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

---

[7] The McDonnell Douglas analysis was refined in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993), and Reeves v. Sanderson Plumbing Products, Inc., – U.S. –, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

[8] The required elements of a prima facie case of employment discrimination are the same under Title VII and Section 1981. Gairola v. Commonwealth of Va. Dept. of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir.1985).

Once the defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)(citing Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by the defendant is not its true reasons, but were pretext for discrimination. Reeves, 530 U.S. at 143. During all of the burden shifting scheme set forth in McDonald Douglas, the ultimate burden of proving that defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

Plaintiff may also proceed under the mixed-motive method of establishing intentional discrimination. Under this method, a plaintiff must present sufficient evidence, direct or circumstantial, that, despite the existence of legitimate, nondiscriminatory reasons for the adverse employment action, an illegal factor (i.e., race) was a motivating factor in the decision. Hill, 354 F.3d at 284-86. Plaintiff need not show race was the sole motivating factor but only that it was a motivating factor. Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). The racial bias must come from a relevant decision maker.[9] Also, the protected trait "must have actually played a role in the employer's decision making process and had a determinative influence on the outcome." Hill, 354 F.3d at 286.

Regardless of which method is used to analyze the claim, plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against him based on his race. It is not necessary to decide "whether the reason was

---

[9] See Hill, 354 F.3d at 291 ("an employer will be liable not for the improperly motivated person who merely influences the decision, but for the person who in reality makes the decision.").

wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."[10] Hawkins v. Pepsico, 203 F.3d 274, 279 (4thCir. 2000)(quoting and citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299(4th Cir. 1998); DeJarnette, 133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination ...." (internal quotation marks omitted)); Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir.1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization, as long as the employer does not violate the ADEA."); Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir.1995) ("Title VII is not a vehicle for substituting the judgment of a court for that of the employer").  It is the perception of the employer that is critical. Hawkins, 203 F.3d at 280.  Even a reasoned decision based on incorrect facts is not evidence of pretext.  Pollard v. Rea Magnet Wire Co., 824 F.3d 557, 559 (7th Cir. 1987), cert. denied, 484 U.S. 977 (1987).

*Systematic Discrimination Claim*

"[A]n individual plaintiff in a private, non-class action alleging employment discrimination is not litigating common questions of fact, but the discrete question of whether the employer discriminated against the plaintiff in a specific instance." Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 761 (4th Cir.1998), vacated on other grounds, 527 U.S. 1031 (1999).  In his response to Defendant's Motion for Summary Judgment, Plaintiff concedes that he cannot establish a group for

---

[10] "Proof that the employer's proffered reasons are unpersuasive, or even obviously contrived, . . . does not necessarily establish that [plaintiff's] proffered reason (race discrimination) . . . is correct." Reeves, 530 U.S. at 146-47. "It is not enough to disbelieve the [employer]." Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004). Plaintiff must show a reasonable jury could "believe [her] explanation of intentional race discrimination." Id.

purposes of a systematic discrimination claim and, thus, must pursue and individual disparate treatment claim. Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment at 11.

### *Individual Discrimination Claim*

Plaintiff in the present case meets the first and third elements of a prima facie case of race discrimination: as a black male he is a member of a protected class and he suffered an adverse employment action when his supplemental services contract was terminated. Plaintiff has failed to present any specific evidence that he was qualified for his job or that he was performing it satisfactorily. However, in light of the fact that he had twenty-six years of teaching experience and nineteen years of coaching experience, the undersigned will, for purposes of this motion, assume that Plaintiff was qualified and had been performing his job satisfactorily. Nevertheless, Plaintiff fails to establish a prima facie case of discrimination because he has failed to set forth evidence to suggest that similarly situated employees who are not a part of the protected class were treated differently.

Plaintiff must establish that "other employees" were similarly situated in all relevant respects; that they "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F2d 577, 583 (6th Cir. 1992)(citing Mazzella v. RCA Global Communications, Inc., 642 F.Supp. 1531 (S.D.N.Y.1986), aff'd, 814 F.2d 653 (2d Cir.1987); Lanear v. Safeway Grocery, 843 F.2d 298 (8th Cir.1988) (plaintiff must prove that he and the white employee were similarly situated in all respects and that the other employee's acts were of comparable seriousness to his own); Cox v. Electronic Data Systems Corp., 751 F.Supp. 680 (E.D.Mich.1990)); Radue v. Kimberly-Clark Corp., 219 F3d 612,617-18 (7th Cir.

2000)(holding that plaintiff must demonstrate that the same supervisor was involved in comparable situations to demonstrate disparate treatment of similarly situated employees); Stanback v. Best Diversified Products, Inc., 180 F.3d 903, 910 (8th Cir. 1999)(same); Shumway v. United Parcel Serv., Inc., 188 F.3d 60, 64 (2d Cir. 1997)(employees were not similarly situated because they were not supervised by the same person).[11]

Plaintiff appears to allege that he was treated differently from Coach Moss and the baseball coach, who were similarly situated employees who also engaged in violations of the High School League rules, and that he was treated differently from Coach Moss and the male teacher, who were similarly situated employees who also engaged in unprofessional conduct. Although Plaintiff and the "comparators" were all supervised by the principal of Lake City High School and the Superintendent of the District, their conduct was not the same. Although the conduct of Plaintiff and the comparators does not have to be identical, it must be of "comparable seriousness." Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993).

Plaintiff admittedly used the word "faggot" in his classroom. Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment at 3; Ex. 3 to Defendant's Motion. A complaint was made to the high school and the District's investigation into the incident revealed that Plaintiff made statements during class about his intolerance for "gays" and "faggots" in a way that lead students in the classroom to believe that he was referring to a specific student in the class. Ex. 3 to Defendant's Motion.

---

[11] There is no published Fourth Circuit case on point; however, the Fourth Circuit has cited with approval the precedent in this string cite in the unpublished cases of Flateau v. South Carolina Commission for the Blind, 2002 WL 31553805 (4th Cir. 2002); Heyward v. Monroe, 1998 WL 841494 (4th Cir. 1998); Edwards v. Newport News Shipbuilding and Dry Dock Co., 1998 WL 841567 (4th Cir. 1998).

In addition, Plaintiff violated the High School League participation rules by allowing students to participate in more than three games during a seven day period. Ex. 3 to Defendant's Motion. Plaintiff admitted to allowing at least one player to "dress out" for more than three games, but claimed that he did not realize the participation rule had been violated because the students did not actually play in those games. Plaintiff Dep. at 137-40 (Ex. 2 to Defendant's Motion). As a result of the violation, the High School League imposed a fine of one hundred dollars on the school and required that the team forfeit all of the games in which the ineligible participation occurred. Ex. 3 to Defendant's Motion.

In contrast, the High School League determined that the baseball coach did not violate the rules by allowing a player to participate in games during a semester in which he had numerous absences and no sanction was imoposed. Ex. 3 to Defendant's Motion; Blue Dep., Ex. 7 (Ex. 3 to Plaintiff's Response). Accordingly, the baseball coach is not a proper comparator.

In her affidavit, Ms. Wright indicated that she terminated Plaintiff's supplemental services contract based upon his classroom behavior and violations of the High School League rules. Id. However, in addition to this conduct, Plaintiff was previously reprimanded twice for failing to adhere to the athletic policy manual and for violating the District's procurement policy. Id.

The male teacher received an oral reprimand from Ms. Wright for being in a bathroom stall with two female students to verify their reports of writing on the bathroom wall. Ex. 3 to Defendant's Motion. Plaintiff has failed to produce any evidence to suggest that the male teacher ever received any other type of disciplinary action. Therefore, even if the seriousness of the male teacher's actions was comparable to that of Plaintiff's classroom behavior, there is no evidence that the male teacher engaged in a combination of offenses as did Plaintiff. See Cook, 988 F.2d at 511

(prima facie case of race discrimination not established where the white employees engaged in similar offense, but not in a combination offenses, as did the plaintiff).

Coach Moss violated the participation rule by allowing football players to participate in more than eight quarters in a seven day period. Blue Dep., Ex. 7 (Ex. 3 to Plaintiff's Response). The violation was considered to be an honest mistake due to the unusual circumstance of having to play three games in one week because of inclement weather during the previous week. Id. The High School League declined to impose a sanction against the high school for this violation, and the District declined to discipline him. Id.; Ex. 3 to Defendant's Motion. In addition, athough the CEEE notified the School Board that Coach Moss had allegedly engaged in nineteen violations of the High School League rules, there is no evidence in the record that the District was similarly made aware of these violations. Without knowledge of the alleged violations, the District would have been unable to investigate and, if necessary, discipline Coach Moss.

Plaintiff submits that Coach Moss also engaged in unprofessional conduct by kicking a football player in the rear and choking another coach. However, the player indicated that Coach Moss' actions were a form of motivation and declined to file a complaint in the matter, and the other coach stated that the choking incident was blown out of proportion and also declined to file a complaint. Ex. 3 to Defendant's Motion. As such, the issues were not pursued by the District and no discipline was enforced against Coach Moss. Id.

Coach Moss' violation of the High School League rules is not comparable to Plaintiff's rules violation in light of the unusual circumstances surrounding the violation by Coach Moss and the fact that the High School League did not sanction the school as a result of Coach Moss' violation. In addition, complaints were never filed regarding the incidents during which Plaintiff alleges that

Coach Moss was unprofessional. Even if Coach Moss' rules violation was comparable to the violation by Plaintiff, no evidence exists in the record to suggest that Coach Moss has ever received any previous discipline. Unlike Plaintiff, Coach Moss has not engaged in a combination of offenses. As such, Coach Moss is not a similarly situated employee.

In light of the above analysis, because Plaintiff has failed to identify a similarly situated white employee who was treated differently than him for similar conduct, Plaintiff has failed to establish a prima facie case of discrimination and summary judgment is appropriate as to his Title VII claim. However, even if Plaintiff could establish a prima facie case of discrimination, Defendant has offered racially neutral reasons for terminating Plaintiff's supplemental services contract. As stated above, it is not necessary to decide "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Hawkins v. Pepsico, 203 F.3d 274, 279 (4thCir. 2000)(quoting and citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299(4th Cir. 1998). The District terminated Plaintiff's supplemental services contract because of his unprofessional behavior in the classroom and his violation of the High School League participation rules. In its memorandum, Defendant noted,

> By any standards, this is inappropriate workplace behavior that cannot be tolerated, especially by a coach who serves as a role model for students. The District determined that the Plaintiff should no longer serve as head varsity basketball coach. The classroom incident had caused disruption of the school environment to the point where the student was being harassed by others and made threats towards the Plaintiff. The Plaintiff had demonstrated a personal prejudice and advocated intolerance and discrimination against others based upon their sexual preference. He could not serve as a role model for the students.

Memorandum in Support of Defendant's Motion for Summary Judgment at 18. Defendant's burden at this stage during the burden-shifting process is one of production, not persuasion. St. Mary's

Honor Center, 509 U.S. at 506. Because Defendant has produced a legitimate, nondiscriminatory reason for the adverse employment action, the sole remaining issue is "discrimination vel non." Reeves, 530 U.S. at 143 (citing Postal Service Bd. of Governors, 460 U.S. at 716). Plaintiff must demonstrate that Defendant's stated reason is pretext for discrimination. Reeves, 530 U.S. at 143. Plaintiff has failed to do so. In response to Defendant's nondiscriminatory reason for terminating Plaintiff's contract as head basketball coach, Plaintiff simply states that "the Board voted down racial lines to reinstate the Plaintiff to the Basketball position."[12] Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment at 16. However, the decision to terminate Plaintiff's contract as head basketball coach was made by the Superintendent of the School District, not the School Board. Therefore, the results of the School Board vote are inapposite to the question of whether Defendant's reason for terminating Plaintiff was merely pretext for a discriminatory reason.

Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude Defendant intentionally discriminated against him based on his race. Plaintiff has failed to do so, and, thus, it is recommended that summary judgment be granted as to Plaintiff's Title VII claims.

***State Law Claims***

If the Court accepts this report and recommendation, then the only original federal jurisdiction claim will be dismissed. Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." The Fourth Circuit has

---

[12]Although the minutes of the Board meetings set forth who voted in favor and who voted against each motion, the racial composition of the Board was not provided. Ex. 4 to Plaintiff's Response.

recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989).  Therefore, the undersigned recommends that the Court decline to retain jurisdiction over Plaintiff's state law causes of action for breach of contract, breach of contract with fraudulent intent and wrongful termination in violation of employment contract.

## CONCLUSION

For the foregoing reasons, it is recommended that Defendant's Motion for Summary Judgment be granted as to Plaintiff's Title VII claims and the Court decline to retain jurisdiction over the remaining state law claims.  In addition, if the Court adopts this recommendation, Defendant's Motion to Strike (Document # 53) shall be rendered moot.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 25, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice contained of the following page.**